**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 36121**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **Moscow, April 2010 Term** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **2010 Opinion No. 60** |
| | ) | |
| **v.** | ) | **Filed: June 1, 2010** |
| | ) | |
| **JANE DOE, II and JOHN DOE, I** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **Real Parties of Interest-Appellants.** | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John P. Luster, District Judge. Hon. Robert B. Burton, Magistrate Judge.

The district court decision affirming the magistrate is <u>reversed</u> and the probation order is <u>vacated</u>.

Palmer, George & Madsen, Coeur d'Alene and Brown, Justh & Romero, PLLC, Coeur d'Alene, for Appellants. Christopher Schwartz and Jonathan Hull argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for Respondents. Kenneth Jorgensen argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

In this consolidated appeal, John and Jane Doe challenge the statutory and constitutional authority of the magistrate judge to require them to undergo random drug urinalysis testing as a condition of their minor daughter's formal probation.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2005, John and Jane Doe, Appellants, appeared without an attorney in magistrate court with their minor daughter, who, with the consent of her parents, signed a written admission to two counts of petit theft. At the disposition hearing the following month, the magistrate found the Does' daughter to be under the purview of the Juvenile Corrections Act ("JCA") and imposed informal probation on her for her offenses. Because a social investigation revealed that the Does had a history of drug abuse and that Jane was on probation for possession

1

of marijuana drug paraphernalia, the magistrate questioned the Does about their use of controlled substances. Jane admitted to the magistrate that she used methamphetamine before having her children and had continued to smoke marijuana until she was caught with paraphernalia sometime prior to the events in this case. The magistrate consequently required both John and Jane to undergo random drug urinalyses as a term of their daughter's probation.

John subsequently signed two written admissions to smoking marijuana on separate occasions shortly after the probation terms were imposed. Jane signed a similar written admission to using marijuana after the terms had been imposed. Both of the Does also submitted urine samples that tested positive for THC.[1] Additionally, the Does' daughter was found to have violated the terms of her probation for various reasons. The Does obtained counsel for the Order to Show Cause Hearing to determine whether to revoke their daughter's informal probation and to hold them in contempt for their drug use. Although the Does both tested positive for THC at the Order to Show Cause Hearing, the State moved to withdraw the contempt action because the Does were complying with the order to submit to urinalysis testing.

At the Disposition Hearing, the magistrate placed the Does' daughter on formal probation and imposed terms requiring the Does to submit to random urine testing and not to violate controlled-substance laws. The disposition order admonished the Does that they could be subject to contempt proceedings if they disobeyed the order.[2] The Does refused to sign the order. Based in part on the juvenile probation officer's report that the Does were using marijuana in front of their daughter, the magistrate also expanded the JCA proceedings into a Child Protection Act proceeding. These proceedings were ultimately dismissed based on contradictory evidence.

The Does appealed their probation terms to the district court, arguing that the magistrate lacked statutory authority under I.C. § 20-520(1)(i) to require them to submit to random urinalyses and that, even if statutory authority existed, such terms violated the U.S. Constitution. The district court affirmed the magistrate's order, but the Idaho Court of Appeals vacated, finding that although the magistrate court acted within its statutory capacity, it nonetheless

---

[1] THC is an abbreviation for tetrahydrocannabinol, the active compound in marijuana.

[2] The order stated:

> NOTICE TO PARENT, GUARDIAN OR CUSTODIAN: The parent, guardian or custodian shall assist in the compliance with the terms herein and shall immediately notify the Probation Department of any violation(s) of this order. Any parent, guardian or custodian violating any order of the Court under the provisions of the Juvenile Corrections Act shall be subject to contempt proceedings.

violated the Fourth Amendment by imposing the urinalysis requirement. This Court granted the State's petition for review.

### III. ISSUES ON APPEAL

1. Whether the magistrate could, under I.C. § 20-520(1)(i), require the Does to involuntarily submit to random urinalysis drug tests as a condition of their daughter's probation.

2. Whether the magistrate could order such tests under the Fourth Amendment.

### IV. STANDARD OF REVIEW

The Does appealed to the district court a term of their daughter's probation pursuant to I.C.R. 54.1(f), which permits appeal from a magistrate's order "affecting the substantial rights of the defendant or the state." Where this Court reviews an appeal of an order from the magistrate judge, it does so independently of the district court. *State v. Anderson*, 145 Idaho 99, 103, 175 P.3d 788, 792 (2008). When reviewing a decision by the Court of Appeals, "this Court gives serious consideration to the views of the Court of Appeals." *State v. Willoughby*, 147 Idaho 482, 485, 211 P.3d 91, 94 (2009). This Court upholds the magistrate's findings of fact if they are supported by substantial and competent evidence, but freely reviews the magistrate's order regarding issues of law. *State v. Jeppesen*, 138 Idaho 71, 74, 57 P.3d 782, 785 (2002).

### V. ANALYSIS

**A. The Magistrate Had Authority to Order Random Urinalysis Testing Under I.C. § 20-520**

The Does contend that, under the JCA, the magistrate could not compel them to undergo random drug tests without their consent.

If such a probation term was imposed pursuant to I.C. § 20-522, the Does would be correct that their consent is necessary. That section conveys authority to the magistrate "to have the juvenile and the juvenile's parent(s) . . . sign a probationary contract with the court containing terms and conditions that the juvenile and the juvenile's parent(s) . . . must adhere to as a condition of the juvenile's probation." I.C. § 20-522. This Court has previously held that, since the parties would be entering a contract, the probation terms would only be valid if the parents gave consent. *State v. Watkins*, 143 Idaho 217, 220, 141 P.3d 1086, 1089 (2006).

The magistrate, however, imposed the urinalysis requirement under I.C. § 20-520, a provision that permits compulsory probation orders on juveniles. "In support of an order under the provisions of this section, the court may make an additional order setting forth reasonable conditions to be complied with by the parents, the juvenile, his legal guardian or custodian . . . ."

3

I.C. § 20-520(1)(i). Since § 20-520(1)(i) permits probation terms to be imposed on the juvenile's parents in an order, rather than a contract, the parents' consent is not necessary. *Watkins*, 143 Idaho at 221, 141 P.3d at 1090. Since it was reasonable for the magistrate to conclude that a drug-free home environment would facilitate the Does' daughter's rehabilitation, there was statutory authority to require them to undergo random urinalysis testing for controlled substances.[3]

The Does nonetheless contend that permitting the tests would contravene the legislative policy undergirding the JCA. Idaho Code § 20-501 states that the legislature intended the department of juvenile corrections to operate according to a number of enumerated policies. Section 4 requires the department to "[i]nvoke the participation of the juvenile offender's parent . . . in assisting the juvenile to recognize and accept responsibility for his delinquent behavior," pay court costs or restitution, and to attend "programs for the development of positive parenting skills." According to the Does, these policies suggest that the legislature intended for parents only to participate in educational programs, not to undergo drug urinalyses as a condition of their children's probation.

Of course, when determining what "reasonable conditions" a magistrate may impose on parents under the JCA, the Court's objective is to give effect to legislative intent. *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007). This includes examining the language used in the statute, the reasonableness of the competing interpretations, and the policy behind the statute. *State v. Kimball*, 145 Idaho 542, 544, 181 P.3d 468, 470 (2008).

Since the express legislative goal here is to rehabilitate minors and to "assist the juvenile in developing skills to become a contributing member of a diverse community," I.C. § 20-501, the legislature gave magistrates the discretion to require drug testing for parents, at least where it

---

[3] John also argues that, unless the magistrate finds that the Does' possible drug use contributed directly to their daughter's criminal activity, the magistrate lacks jurisdiction to require them to take urine tests. Since he cites no legal authority, this argument would ordinarily be waived, *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996), but this Court is always obligated to ensure its own jurisdiction, *Highlands Dev. v. Ada County Comm'rs*, 145 Idaho 958, 960, 188 P.3d 900, 902 (2008).

Idaho Code § 20-510 confers jurisdiction over the parent if the prosecuting attorney serves the juvenile petition upon him or her. There is no additional requirement that probation conditions on parents may only prohibit conduct that directly caused the juvenile's criminal actions. *See* I.C. § 20-520(1)(i) (empowering the court to impose "reasonable conditions"). The record does not indicate whether the Does received service of the petition, but the magistrate court twice concluded it had jurisdiction, and the Does do not challenge jurisdiction on this ground.

is apparent that drug use is a feature of home life. Drug use by a minor's parents could reasonably detract from the minor's education and rehabilitation.

The statute specifically applicable to the magistrate's order in this case also demonstrates the legislature's intent to allow parental urinalysis testing. Idaho Code § 20-520(1)(j) permits the court to "make any other reasonable order which is in the best interest of the juvenile or is required for the protection of the public." Similarly, § 20-520(1)(i) specifically states that the court may restrict parents' visitation with children, again evincing the legislature's goal of protecting children from damaging contact with their parents. Since the statute permits the magistrate to impose requirements that ultimately serve the juvenile's best interests, including restricting the Does' contact with their child, it therefore enables the court to require the Does to take urinalyses if drug use may be occurring in front of the child.

**B.** **The Probation Order Violated the Fourth Amendment by Requiring Random Urinalysis Testing as a Condition of the Does' Daughter's Probation**

Because it intrudes on bodily privacy, requiring parents to provide urine samples is a search within the meaning of the Fourth Amendment. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 617, 109 S. Ct. 1402, 1413 (1989). To satisfy the Constitution, any search by a government actor must be reasonable. *United States v. Sharpe*, 470 U.S. 675, 682, 105 S. Ct. 1568, 1573 (1985). A reasonable search requires a warrant supported by probable cause unless a recognized exception applies. *State v. Smith*, 144 Idaho 482, 485, 163 P.3d 1194, 1197 (2007). There is a well-recognized exception for instances where there is a "special need" for a search "beyond the normal need for law enforcement" that makes the warrant process impracticable. *Skinner*, 489 U.S. at 619, 109 S. Ct. at 1414. Whether a special need exempts the search procedure from the warrant requirement is determined by balancing the intrusion on the individual's Fourth Amendment interests against the State's legitimate interests. *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S. Ct. 1391, 1396 (1979).

The first step is to gauge the weight and nature of the privacy interest at stake. *Bd. of Educ. v. Earls*, 536 U.S. 822, 830, 122 S. Ct. 2559, 2565 (2002). In some situations, the individual might have a diminished or nonexistent expectation of personal privacy because he or she is in the care of the State, such as a child in public school. *See New Jersey v. T.L.O.*, 469 U.S. 325, 339–40; 105 S. Ct. 733, 741–42 (1985) (noting that students have a lower expectation of privacy). The U.S. Supreme Court has also upheld suspicionless drug testing when conditioned on a benefit like obtaining a job in a highly sensitive position, for example those

5

dealing with public safety, law enforcement, or drug interdiction. *See Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 672, 109 S. Ct. 1384, 1394 (1989) (stating that U.S. Customs employees working in contraband interdiction "have a diminished expectation of privacy" with respect to urine tests).

It goes without saying that since the Does are adults, the State has no stewardship over them that would justify asserting a greater scope of authority. They have not voluntarily submitted to the State's custody or oversight. Similarly, the Does are not seeking any benefit, such as employment, that would ordinarily subject them to enhanced government oversight. Although the State has a compelling interest in ensuring the well-being of Idaho's children, the Does themselves are not subject to lesser Fourth Amendment protections in their persons merely by virtue of the fact that their daughter has committed a crime.

More relevant here is that those who have been convicted of a criminal offense, such as parolees and prison inmates, can also be subject to greater levels of State intrusion. *See Hudson v. Palmer*, 468 U.S. 517, 527, 104 S. Ct. 3194, 3201 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells . . . ."); *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S. Ct. 2593, 2601 (1972) (stating that parolees can be subject to restrictions that would be unconstitutional when applied to the general population). Specifically, it is well established that probationers have a lower expectation of privacy and liberty. *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S. Ct. 3164, 3169 (1987); *State v. Gawron*, 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987).

Although the Does' daughter is on probation, it does not necessarily follow that they themselves are subject to a diminished expectation of privacy in their bodily fluids. Parolees, probationers, and indeed all criminal offenders are on a "continuum of state-imposed punishments. *Samson v. California*, 547 U.S. 843, 850, 126 S. Ct. 2193, 2198 (2006) (quotations omitted). The probationer can expect to be supervised by the State on the theory that the probationer, as a recent offender, "is more likely than the ordinary citizen to violate the law." *United States v. Knights*, 534 U.S. 112, 119–20, 122 S. Ct. 587, 591–92 (2001). However, this theory only applies to offenders—probation, parole, and other criminal sanctions can only be imposed on individuals "after verdict, finding, or plea of guilty." *Griffin*, 483 at 874, 107 S. Ct. at 3168. It is for this reason that the Ninth Circuit has found unconstitutional home urine testing

6

for people released pending trial, reasoning that they have not yet suffered "judicial abridgment of their constitutional rights." *United States v. Scott*, 450 F.3d 863, 872 (9th Cir. 2006). The Does have not been adjudicated guilty of any drug crime, nor has any neutral magistrate formally issued a warrant based on probable cause for such a criminal investigation. *State v. Nunez*, 138 Idaho 636, 642, 67 P.3d 831, 837 (2003) (citing *United States v. Leon*, 468 U.S. 897, 914, 104 S. Ct. 3405, 3416 (1984)). The Does are presumed innocent and are therefore not located anywhere on the "continuum of state-imposed punishments." Aside from pointing to the possibility in their daughter's presentence social investigation that the Does abused drugs, the State has not overcome any formal procedural safeguards to diminish the Does' Fourth Amendment rights in their bodies. The Does therefore retain the full measure of Fourth Amendment privacy.[4]

The next step is to measure the intrusiveness of the search at issue. *Earls*, 536 U.S. at 832, 122 S. Ct. at 2566. Although a urine test does not physically invade a person's body, it necessarily requires the Does "to perform an excretory function traditionally shielded by great privacy." *Skinner*, 489 U.S. at 626, 109 S. Ct. at 1418. However, "the degree of intrusion depends upon the manner in which production of the urine sample is monitored," as well as "the information it discloses concerning the state of the subject's body, and the materials he has ingested." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657, 115 S. Ct. 2386, 2393 (1995). Neither the parties, nor the record, offer any details about how the urine tests in this case are administered, such as whether the samples are provided in a private room, and whether the Does are visually or aurally monitored while urinating, or both. The record also is not clear about what drugs or compounds the urine test detects, although presumably the test only identifies controlled substances. Without more information, this Court cannot determine how intrusive the urine testing is.

Last, the Court must determine whether the State has a sufficient reason to require the urine tests. Where the test subject has a full expectation of Fourth Amendment privacy, as do the Does in this case, "the proffered special need for drug testing must be substantial—important enough to override the individual's acknowledged privacy interest, sufficiently vital to suppress the Fourth Amendment's normal requirement of individualized suspicion." *Chandler v. Miller*,

---

[4] Because the search at issue here is of the Does' persons, specifically their bodily fluids, this opinion does not address situations in which police search an area controlled in common by a probationer and others not under the State's supervision. *See State v. Barker*, 136 Idaho 728, 731–32, 40 P.3d 86, 89–90 (2002) (upholding a warrantless search of the common areas in an apartment occupied by a parolee and another person).

520 U.S. 305, 318, 117 S. Ct. 1295, 1303 (1997). A "demonstrated problem of drug abuse, while not in all cases necessary to the validity of a testing regime," can help support a warrantless testing program. *Id.* at 319, 117 S. Ct. at 1303.

Here, neither party disputes the fact that protecting the welfare of children and rehabilitating child offenders are among the most laudatory of State interests. Moreover, "voluntary involvement of a parent in the rehabilitation of his or her child likely has a salutary effect." *State v. Watkins*, 143 Idaho 217, 221, 141 P.3d 1086, 1090 (2006). The magistrate also acted upon individualized suspicion available in the child's social investigation indicating that the Does might be using drugs at home.

However, even where a substantial State interest exists, this Court will not uphold a search "whose primary purpose is ultimately indistinguishable from the general interest in crime control." *City of Indianapolis v. Edmond*, 531 U.S. 32, 44, 121 S. Ct. 447, 455 (2000). In *Ferguson v. City of Charleston*, a hospital devised a program in which it tested pregnant patients for cocaine if they showed one among a list of medical indicators and then sent positive results to the authorities. 532 U.S. 67, 72, 121 S. Ct. 1281, 1285 (2001). Even though the patients were only tested if the hospital suspected cocaine use and they could avoid arrest by consenting to substance abuse treatment, the Court found that the practice was impermissible because it was primarily geared toward law enforcement. *Id.* at 81, 121 S. Ct. at 1290.

Just like the testing program in *Ferguson*, testing in this case is characterized by a general interest in law enforcement. The magistrate imposed the urinalysis requirement during juvenile delinquency proceedings under the JCA, which are quasi-criminal in nature. *See* I.C. § 20-508 (allowing courts to waive jurisdiction under the JCA so that the juvenile may be transferred to "adult criminal proceedings"). The magistrate's order requires the Does to report to their daughter's probation officer, who is an officer of the county required by law to "enforce probation conditions." *Id.* §§ 20-529, -533(3). Nothing prevented the probation officer from conveying the Does' test results to law enforcement. Their failure to comply could result in contempt sanctions, which would be brought and pursued by the prosecuting attorney. Indeed, the juvenile probation officer in this case reported the parents' positive urinalysis results to the prosecutor. It also appears that such evidence could be used to obtain search warrants against the Does and would be admissible against the Does in further criminal proceedings for encouraging

8

their daughter's delinquency. *See id.* § 20-526 (punishing anyone "who by any act or neglect encourages, aids or causes a juvenile to come within the purview or jurisdiction of [the JCA]").

The State contends that the goal here is primarily to rehabilitate the minor, not to enforce criminal sanctions. The U.S. Supreme Court dealt with a similar argument in *Ferguson*:

> While the ultimate goal of the program may well have been to get the women in question into substance abuse treatment and off of drugs, the immediate objective of the searches was to generate evidence for law enforcement purposes in order to reach that goal. . . . Because law enforcement involvement always serves some broader social purpose or objective, under [the State's] view, virtually any nonconsensual suspicionless search could be immunized under the special needs doctrine by defining the search solely in terms of its ultimate, rather than immediate, purpose.

*Ferguson*, 532 U.S. at 82–84, 121 S. Ct. at 1291–92. This reasoning applies equally to the Does. Just as the urine-test requirement in *Ferguson* was intended to protect the health of unborn fetuses by detecting prenatal cocaine use, the drug testing here is intended to ensure the Does' daughter's rehabilitation by detecting drug use at home. The immediate method for attaining the goals in both cases is to report the drug use for criminal sanctions.

In response, the State also argues that the urine testing does not further the interests of law enforcement because the Does would only be held in contempt of court for refusing to comply. The State reasons, without authority, that contempt is not a criminal sanction, but rather is merely a civil power exercised by the judiciary.

It is, of course, true that the judiciary's power to hold individuals in contempt flows from its inherent authority and is not conveyed by statute. *McDougall v. Sheridan*, 23 Idaho 191, 222–23, 128 P. 954, 964–65 (1913). But the State's assertion that the contempt proceedings in this case cannot be criminal in nature is simply wrong. The magistrate has the power to impose a fine of up to $5000 and to imprison the contemnor for up to five days. I.C. § 7-610; *see also id.* § 20-520(5) (stating that ordinary contempt proceedings apply when parents violate juvenile probation orders). Punishing the Does for failing their urinalyses or for refusing to undergo the test could in either case involve a determinate fine or determinate jail sentence, both of which are criminal-contempt penalties. *Camp v. East Fork Ditch Co.*, 137 Idaho 850, 865, 55 P.3d 304, 319 (2002). "[C]onvictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same." *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S. Ct. 1477, 1482 (1968). Criminal contempt cannot be imposed on an individual absent virtually all the ordinary protections afforded by the U.S. Constitution. *Hicks*

9

*v. Feiock*, 485 U.S. 624, 632, 108 S. Ct. 1423, 1429–30 (1988); *Camp*, 137 Idaho at 860–61, 55 P.3d at 314–15. This specifically includes the Exclusionary Rule's protection against Fourth Amendment violations. *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 222, 88 S. Ct. 1472, 1476 (1968). Criminal contempt is therefore just like any other criminal sanction.

In summary, the magistrate's order requiring the Does to undergo urinalysis testing constituted a search under the Fourth Amendment of the U.S. Constitution that is presumptively invalid absent a warrant. The intrusion is not extraordinarily invasive, but the Does do not have a diminished expectation of privacy in their bodies simply because their daughter is on juvenile probation. The search is therefore unconstitutional because it primarily furthers the State's interest in law enforcement.

## VI. CONCLUSION

Although the magistrate had the statutory power to require the Does to undergo urinalysis testing as a condition of their daughter's juvenile probation, such a term is unconstitutional under the Fourth Amendment of the U.S. Constitution. The district court's decision affirming the magistrate is reversed and the probation order is vacated.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON **CONCUR.**