## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 37032

JASON MILLER, a single person,

    Plaintiff-Respondent,

v.

IDAHO STATE PATROL, TROOPER
CHRISTOPHER YOUNT,

    Defendants-Appellants,

and

JANE DOE YOUNT, BONNER COUNTY,
BONNER COUNTY SHERIFF'S
DEPARTMENT, DEPUTY JASON SLINGER
and JANE DOE SLINGER, husband and wife,
and the marital community comprised thereof,

    Defendants.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2011 Term

2011 Opinion No. 52

Filed: May 18, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Hon. John T. Mitchell, District Judge.

The decision of the district court is <u>vacated</u>. This case is <u>remanded</u> with instructions to enter judgment in favor of Appellants. No attorney fees are awarded. Costs are awarded to Appellants.

Johnson Law Group, Spokane, Washington, for Appellants. Peter J. Johnson argued.

Phelps & Associates, Spokane, Washington, for Respondent. Douglas D. Phelps argued.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

Idaho State Trooper Christopher Yount and the Idaho State Police appeal the district court's decision not to grant summary judgment in their favor on Jason Miller's claims under 42 U.S.C. § 1983 and state tort law alleging that Officer Yount unreasonably catheterized him

following an arrest for DUI.[1]  Because American search-and-seizure law is undeveloped as to when an officer may administer an involuntary warrantless catheterization on a suspect, Officer Yount was entitled to qualified immunity for the § 1983 claim.  Further, Yount did not act with malicious or criminal intent, so he was entitled to immunity from Miller's tort claims under the Idaho Tort Claims Act.  There is no genuine issue of material fact supporting Miller's remaining tort claims.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The sparse facts in this case are virtually all undisputed.  In May of 2007, a trooper with the Idaho State Police was driving by a gas station in Priest River, Idaho, when he saw Jason Miller, Respondent, staggering around as he entered his car.  The officer contacted Idaho State Trooper Christopher Yount, who arrived to see Miller sitting in the driver's seat of his car.  Yount observed that Miller's pupils were dilated and requested that he perform some field sobriety tests, which Miller failed.

Yount put Miller under arrest for DUI, after which Yount discovered scissors in Miller's pocket that he used for cleaning a marijuana pipe.  Miller also admitted to smoking marijuana "every day."  Yount took Miller to a hospital in Sandpoint, Idaho, for a urine test.  At the hospital, Miller refused to provide a urine sample, saying "I will not fight you, but I will not give you a sample voluntarily."  A registered nurse at the hospital then catheterized Miller at Yount's request and extracted a urine sample.  Afterward, Yount found a pipe in Miller's shirt pocket containing methamphetamine residue.  Yount also administered a drug-recognition evaluation on Miller at the jail that indicated Miller was under the influence of marijuana and a central-nervous-system stimulant.  Miller later pled guilty to felony possession of methamphetamine, possession of drug paraphernalia, and misdemeanor DUI.

There is no indication that Miller struggled while the hospital nurse inserted the catheter.  The record is silent as to how or where the nurse extracted the sample or who was present in the room.  There is nothing in the record to indicate whether the urine sample tested positive for any controlled substances.  It is also unclear why Yount chose to have Miller catheterized rather than performing a blood draw.

---

[1] This case is improperly captioned.  It should read "Idaho State Police."

In April of 2008, Miller filed a complaint in this case seeking damages for a number of claims against the Idaho State Police ("ISP") and Yount (collectively "Appellants").[2] He first claimed under 42 U.S.C. § 1983 that the involuntary catheterization violated his constitutional rights. He next asserted tort claims for assault, battery, and negligence, including that the ISP negligently supervised Yount. Miller also claimed that the ISP would be liable for Yount's actions under the doctrine of respondeat superior. Appellants moved for summary judgment on all of Miller's state-tort claims under I.R.C.P. 56(c), and separately moved to dismiss Miller's § 1983 claim under I.R.C.P. 12(b)(6). Miller then filed a cross-motion for summary judgment on all of his claims.

The district court ruled on all three motions in a memorandum decision, which it later affirmed in its Memorandum Decision on Appellants' Motion to Reconsider. It refused to dismiss Miller's § 1983 claim, holding that a genuine material fact issue remained as to whether Yount benefited from qualified immunity. The court held that the law is well-established that the police may not unreasonably execute a bodily search on a suspect, but also held that it was for the jury to determine whether it was unreasonable for Yount to catheterize Miller. Upon the parties' stipulation, the district court later entered an order dismissing the § 1983 claim against the ISP and against Yount in his official capacity, leaving only an individual § 1983 claim against Yount. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309–10 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037–38 (1978) (holding that § 1983 does not permit suits against local governments based solely on an employer-employee relationship).

In addressing Miller's tort claims, the district court held that a factual dispute exists as to whether Yount acted "reasonably" for purposes of Miller's assault, battery, and negligence claims. The court further held that there was insufficient evidence to determine whether Yount had acted maliciously or with criminal intent and therefore was not immune from suit under the Idaho Tort Claims Act (ITCA).

---

[2] The Complaint also named as defendants the other trooper at the scene, Trooper Jason Slinger, as well as Slinger's wife, and the Bonner County Sheriff's Department. Upon the parties' stipulation, the district court dismissed all claims against these codefendants. Jane Doe Yount, who is Trooper Yount's wife, was also named as a defendant. The parties apparently stipulated to dismiss all the federal-law claims against her, but the court's order granting the dismissal does not dispose of any state-law claims. Nonetheless, only Trooper Yount and the ISP filed this permissive appeal. This Court therefore cannot address any claims that might remain against Jane Doe Yount.

After denying Appellants' motions, the district court granted their request for permissive appeal under I.A.R. 12.[3] *See* I.A.R. 12(b) (allowing district courts to grant permission to appeal from an interlocutory order or judgment). This Court subsequently accepted Appellants' appeal.

On appeal, Appellants contend that the district court should have ruled that Yount had qualified immunity under § 1983 as a matter of law, rather than allowing the jury to determine whether his actions were reasonable. They assert that there was no constitutional violation and that, if there was, the law regarding forced catheterizations is too unclear to hold Yount liable. They further argue that Yount is immune from Miller's state-tort claims because there is no material issue of fact as to whether he acted maliciously or with criminal intent. Miller counters that Yount violated the Idaho Code's provisions that govern searches of DUI suspects, precluding him from being immune from any of Miller's claims. Neither party requests attorney fees on appeal.

### III. ISSUES ON APPEAL

1. Whether Yount has qualified immunity from Miller's claim that he violated the Fourth Amendment under 42 U.S.C. § 1983.

2. Whether Yount is immune from Miller's tort claims under the ITCA.

### IV. STANDARD OF REVIEW

The district court combined its ruling on Appellants' motion for summary judgment with its ruling on their motion to dismiss. In so doing, the court considered an affidavit and police reports attached to Appellants' motion for summary judgment. The district court therefore converted the matter into a ruling on motions for summary judgment. *Glaze v. Deffenbaugh*, 144 Idaho 829, 831, 172 P.3d 1104, 1106 (2007) (citing I.R.C.P. 12(b)).

Normally, a district judge does not generate an appealable order by denying a motion for summary judgment. *N. Pac. Ins. Co. v. Mai*, 130 Idaho 251, 252–53, 939 P.2d 570, 571–72 (1997) (citing I.A.R. 11(a)(1), 12). Because a permissive appeal under I.A.R. 12 from a denial of a motion for summary judgment leads to such an unusual procedural posture, this Court must "rule narrowly and address only the precise question that was framed by the motion and

---

[3] Idaho Appellate Rule 12(a) provides:

> Permission may be granted by the Supreme Court to appeal from an interlocutory order or judgment of a district court in a civil or criminal action, or from an interlocutory order of an administrative agency, which is not otherwise appealable under these rules, but which involves a controlling question of law as to which there is substantial grounds for difference of opinion and in which an immediate appeal from the order or decree may materially advance the orderly resolution of the litigation.

answered by the trial court." *Aardema v. U.S. Dairy Sys., Inc.*, 147 Idaho 785, 789, 215 P.3d 505, 509 (2009) (quoting *Winn v. Frasher*, 116 Idaho 500, 501, 777 P.2d 722, 723 (1989)). After this Court accepts a permissive appeal, the case proceeds as if it were an appeal as a matter of right, unless otherwise ordered by this Court. I.A.R. 12(d).

When reviewing the district court's ruling on a summary-judgment motion, this Court applies the same standard used by the district court. *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Disputed facts and reasonable inferences are construed in favor of the non-moving party. *Estate of Becker v. Callahan*, 140 Idaho 522, 525, 96 P.3d 623, 626 (2004). "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Indian Springs LLC v. Indian Springs Land Inv.*, 147 Idaho 737, 746, 215 P.3d 457, 466 (2009) (quoting *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 307, 160 P.3d 743, 746 (2007)).

Cross-motions for summary judgment do not change the applicable standard of review. *McFadden v. Sein*, 139 Idaho 921, 923, 88 P.3d 740, 742 (2004) (quoting *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001)). Further, "[t]he fact that both parties move for summary judgment does not in and of itself establish that there is no genuine issue of material fact." *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 360, 93 P.3d 685, 691 (2004).

## V. ANALYSIS

### A. Yount Is Entitled to Qualified Immunity from Miller's Claims Under 42 U.S.C. § 1983 Because the Law Regarding Forced Catheterizations Is Unsettled

While the parties do not dispute the facts of this case, the issue of whether forcibly catheterizing a DUI suspect violates his or her constitutional rights against unreasonable searches and seizures is a highly fact-dependent inquiry.[4] The slim record and insufficient briefing make it impossible to precisely define the personal right at stake and to then determine whether that right had been violated. As a result, even drawing all inferences in Miller's favor, the law

---

[4] For the sake of brevity, this Opinion will henceforth refer to Miller's claim as a "Fourth Amendment" claim.

5

governing involuntary warrantless catheterizations is simply too undeveloped to defeat Yount's qualified-immunity defense.

1.   *This Court Declines to Rule on Whether the Forced Catheterization Violated Miller's Fourth Amendment Rights*

As a general matter, government officials can benefit from qualified immunity in § 1983 suits if they followed a reasonable interpretation of the law. If a government official violates the claimant's constitutional rights, qualified immunity "generally turns on the objective reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038 (1987). Thus, courts ruling on a claim for qualified immunity are essentially confronted with two questions: (1) whether, accepting the plaintiff's assertions as true, the defendant invaded the plaintiff's constitutional rights; and (2) whether the defendant acted reasonably given the state of American law at the time. For about eight years beginning in 2001, prevailing law required courts to address the issues in that order as well. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). *But see Rosenberger v. Kootenai Cnty. Sheriff's Dep't*, 140 Idaho 853, 857–58, 103 P.3d 466, 470–71 (2004) (considering but not deciding the possible underlying constitutional violation and proceeding to the immunity question instead).

In *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009) (unanimous ruling), the U.S. Supreme Court held that this "rigid order of battle" no longer applies. *Pearson* allows appellate courts to decide for themselves how to handle qualified-immunity defenses, providing a laundry list of reasons for which a court might not rule on the constitutional question and simply skip to the qualified-immunity inquiry instead. *Id.* at ---, 121 S. Ct. at 819–21. There is no test or threshold for deciding when to forego the constitutional question, but many of the concerns that justified the U.S. Supreme Court's decision in *Pearson* justify deferring a ruling on the Fourth Amendment issues in this appeal.

Foremost among the reasons for declining to adjudicate the Fourth Amendment question is the opportunity to avoid ruling on a constitutional issue. The general rule of constitutional avoidance encourages courts to interpret statutes so as to avoid unnecessary constitutional questions. *E.g. Clark v. Martinez*, 543 U.S. 371, 381, 125 S. Ct. 716, 724 (2005); *State ex rel Kempthorne v. Blaine Cnty.*, 139 Idaho 348, 350, 79 P.3d 707, 709 (2003) (citing *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 710, 791 P.2d 1285, 1289 (1990)). This case especially should not be decided lightly. Prescribing methods the police may use to test for drugs or alcohol in the

6

bloodstream would have a significant impact on law enforcement agencies across the State, many of which are daily encountering intoxicated drivers.

Subsidiary to the rule of constitutional avoidance is the Court's interest in ensuring that its decision is fully informed. First, it is difficult if not impossible to articulate the constitutional right at stake without knowing the case's factual details. *Pearson*, 555 U.S. at 111, 129 S. Ct. at 820. Moreover, as is further explained below, determining whether a bodily intrusion was unreasonable is a particularly fact-sensitive inquiry. *Winston v. Lee*, 470 U.S. 753, 760, 105 S. Ct. 1611, 1616 (1985). Although this case has progressed past the pleading stage, the parties have submitted hardly any evidence at all. Appellants have only provided police reports summarizing the events that transpired during Miller's arrest. Miller, for his part, has presented literally nothing of evidentiary value—he submitted only a vague unverified complaint and an indigency affidavit.

Second, there is always a risk of bad decision-making when "the briefing of constitutional questions is woefully inadequate." *Pearson*, 555 U.S. at 111, 129 S. Ct. at 820. Miller's brief, in particular, is thoroughly unhelpful. It is just over nine pages long. The first five of those pages are copied word-for-word from the Appellants' brief, while the balance is concerned primarily with whether the police have the statutory authority to carry out involuntary catheterizations, rather than discussing the constitutional limitations that may govern such actions.

Cases like this one are what compelled the U.S. Supreme Court to abandon the strict two-step approach and allow appellate courts to skip the constitutional inquiry:

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions.

*Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 2816 (1985). For these reasons, the Court abstains from reaching the Fourth Amendment issue in this case. We proceed instead to the qualified-immunity question.

2. *Yount Is Entitled to Qualified Immunity from the § 1983 Claim Because the Law Regarding Forced Catheterizations Is Unsettled*

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

7

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002); *accord Arnzen v. State*, 123 Idaho 899, 904, 854 P.2d 242, 247 (1993). The plaintiff has the burden of establishing that the law was well-established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). Absent controlling, pertinent authority from this jurisdiction, the Court should use its full knowledge of its own and other relevant precedents. *Elder v. Holloway*, 510 U.S. 510, 516, 114 S. Ct. 1019, 1023 (1994). Whether the law is clearly established is a question of law to be resolved de novo on appeal. *Id.* Since the Court must determine the state of the law at the time the events took place, which in this case was in May of 2007, subsequent legal developments should only be viewed as illuminating the law as it previously existed.

The first component of this analysis is defining the relevant legal rule at stake. The Court should not define the right too generally, as doing so would essentially vitiate the qualified-immunity doctrine. *Anderson*, 483 U.S. at 639, 107 S. Ct. at 3038. Here, for example, it would not be helpful to simply ask whether police must not execute unreasonable searches or, as Appellants suggest, whether the police can obtain bodily fluid from a person reasonably suspected of driving under the influence. Warrantless blood draws and voluntary urine samples are significantly less intrusive than warrantless forcible catheterizations. Instead, the question should reflect the factual specifics in this case. *See Wilson v. Layne*, 526 U.S. 603, 615, 119 S. Ct. 1692, 1699–1700 (1999) (defining the relevant question as whether "bringing members of the media into a home during the execution of an arrest warrant was lawful").

There are two critical aspects of this case that the Court must consider in order to correctly frame the dispute. First, when viewing facts in the light most favorable to Miller, the Court must assume that the police could have obtained equally reliable test results by less-intrusive alternative means, namely a blood draw. Miller was suspected of being under the influence of marijuana. There is no contention that a blood draw presumably could not have readily detected it. Second, catheterization is a method for obtaining bodily fluid that imposes on personal liberty in novel ways. Thus, the legal question in this case should be defined as follows: Would a reasonable police officer know that as of May 2007, it was unlawful to

8

involuntarily catheterize a suspect based on probable cause to search for dissipating evidence even if less-intrusive alternatives are available?

The Fourth Amendment applies to "all searches that invade the interior of the body— whether by needle that punctures the skin or a visual intrusion into a body cavity." *Friedman v. Boucher*, 580 F.3d 847, 852–53 (9th Cir. 2009) (quoting *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1449 (9th Cir. 1991)). Using a catheter to extract urine is therefore a Fourth Amendment search. *See State v. Doe*, 149 Idaho 353, 357, 233 P.3d 1275, 1279 (2010) (holding that demanding a urine sample is a search because it "intrudes on bodily privacy").

Both the Fourth Amendment and Article I, Section 17 of the Idaho Constitution protect citizens' reasonable privacy expectations against unreasonable government intrusion. *State v. Mubita*, 145 Idaho 925, 932, 188 P.3d 867, 874 (2008). A warrantless search is presumptively unreasonable. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). A search must be performed pursuant to a warrant supported by probable cause unless a recognized exception applies. *State v. Smith*, 144 Idaho 482, 485, 163 P.3d 1194, 1197 (2007). This Court has repeatedly held that all drivers on Idaho's highways have, pursuant to statute, impliedly consented to submit to a blood-alcohol ("BAC") test when an officer has reasonable suspicion that the suspect is driving under the influence of drugs or alcohol. *Halen v. State*, 136 Idaho 829, 833, 41 P.3d 257, 261 (2002) (citing I.C. § 18-8002(1)).[5] However, even if a suspect has impliedly consented to a search for bodily fluids, the Fourth Amendment still requires police to perform the test in a medically acceptable manner and with only reasonable force. *State v. Diaz*, 144 Idaho 300, 303, 160 P.3d 739, 742 (2007).

No Idaho cases discuss involuntary catheterization as a method for extracting bodily fluids, and given the paucity of such cases from anywhere else around the country, it is best to begin with the law that applies generally to bodily searches.

---

[5] Idaho Code § 18-8002(1) provides in full:

> Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol as defined in section 18-8004, Idaho Code, and to have given his consent to evidentiary testing for the presence of drugs or other intoxicating substances, provided that such testing is administered at the request of a peace officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle in violation of the provisions of section 18-8004, Idaho Code, orsection 18-8006, Idaho Code.

The two leading U.S. Supreme Court cases in this area are *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826 (1966), and *Winston v. Lee*, 470 U.S. 753, 105 S. Ct. 1611 (1985). In *Schmerber*, the Court ruled that the police did not violate the defendant's Fourth Amendment rights when they forcibly extracted his blood while he was hospitalized from a car accident he had while driving drunk. 384 U.S. at 772, 86 S. Ct. at 1836. The Court reasoned that, since alcohol dissipates from the bloodstream with time, a warrantless blood draw was acceptable because it was not particularly invasive, was administered by a professional in a safe manner, and obtaining a warrant might have allowed time for the evidence to vanish. *Id.* at 770–72, 86 S. Ct. at 1835–36. The Court emphasized, however, that its decision rested "only on the facts of the present record," and not on broader principles authorizing bodily intrusions. *Id.* at 772, 86 S. Ct. at 1836.

In *Winston*, the Court provided three overarching factors for courts to examine when confronted with a warrantless bodily intrusion: (1) "the extent to which the procedure may threaten the safety or health of the individual," (2) "the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity," and (3) "the community's interest in fairly and accurately determining guilt or innocence." *Winston*, 470 U.S. at 761–62, 105 S. Ct. at 1617–18.[6] The Court emphasized that bodily intrusions are evaluated on a case-by-case basis. *Id.* at 760, 105 S. Ct. at 1616; *see also Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998) (stating that the *Schmerber* inquiry considers a number of factors).

Even though courts nationwide have not had many opportunities to address forced catheterizations, there are some areas where cases appear to be coalescing into universal rules. For instance, it is objectively well-established that a suspicionless catheterization, like any suspicionless bodily search, would be unconstitutional. *Ellis v. City of San Diego*, 176 F.3d 1183, 1192 (9th Cir. 1999); *Ohio v. Funk*, 896 N.E.2d 203, 207–08 (Ohio Ct. App. 2008); *see also Hammer v. Gross*, 932 F.2d 842, 844 (9th Cir. 1991) (stating that a warrantless blood draw requires probable cause). If the police have probable cause to search for something that is *not* likely to dissipate from the body, then a warrantless search for bodily fluids would be unconstitutional. *See Barlow v. Ground*, 943 F.2d 1132, 1138 (9th Cir. 1991) (discussing blood

---

[6] Although the Court did not expressly say so, *Schmerber* requires that the police first have probable cause to search for dissipating evidence in the suspect's bodily fluids. *Fuller*, 950 F.2d at 1449. Because drivers in Idaho impliedly consent to a urine or blood search when an officer has a reasonable suspicion that they are intoxicated, this part of the analysis is not relevant here.

draws); *Graves v. Beto*, 424 F.2d 524, 525 (5th Cir. 1970) (similar). On the other hand, a forced catheterization performed on arrestees solely for medical screening or treatment, and not for investigatory reasons, is constitutional. *Sullivan v. Bornemann*, 384 F.3d 372, 377 (2004) (addressing catheterizations done by hospital personnel for medical clearance before accepting a suspect into county jail); *Meyer v. Woodward*, 617 F. Supp. 2d 554, 565 (E.D. Mich. 2008); *Tinius v. Carroll Cnty. Sheriff Dep't*, 321 F. Supp. 2d 1064, 1075–76 (N.D. Iowa 2004) (upholding a catheterization performed by hospital personnel on a person detained under the police community-caretaking function); *see also United States v. Attson*, 900 F.2d 1427, 1433 (9th Cir. 1990) (stating that a blood draw performed by medical personnel for purely medical reasons was permissible).

The clarity ends, however, once the Court attempts to determine whether it is reasonable for police to catheterize someone to search for dissipating evidence of a crime without a warrant. This question is at its thorniest where, as here, the police presumably could just as easily have performed a relatively painless blood draw rather than use a catheter to extract urine.

Applying the *Winston* factors, forcible blood draws and forcible catheterizations share many similarities. Blood draws, like a urine sample, are highly accurate at determining what substances, if any, are in a suspect's body. Both procedures are relatively common, can be performed by a variety of medical professionals, and do not permanently harm the person tested. Yet despite their similar purposes, blood draws and catheterizations also have significant differences.

First, catheters impinge on a person's dignity much more severely than a blood draw. "[T]he forceful use of a catheter is a 'gross personal indignity' far exceeding that involved in a simple blood test." *Ellis*, 176 F.3d at 1192 (quoting *Yanez v. Romero*, 619 F.2d 851, 855 (10th Cir. 1980)). A person being catheterized must pull his or her pants down to expose the genitalia, potentially in front of members of the opposite sex, and allow a stranger to handle very private parts of his or her body, not for consensual medical treatment, but at the behest of the State. *See Hooper v. Pearson*, No. 2:08-CV-871, 2010 WL 2990809, at *5 (D. Utah 2010) (describing how male officers restrained a female suspect while two women pulled her pants down and catheterized her). Blood draws, by contrast, occur not just in private doctors' offices but also at public blood drives. They typically do not require the person being tested to remove sensitive articles of clothing or otherwise be subjected to private or embarrassing activity.

11

Second, catheters involve a significantly greater amount of physical trauma. Unlike a needle, which punctures the skin to reach a blood vessel just below the surface, a catheter is a tube that must pass all the way through the urethra and enter the bladder. Even though catheterization is fairly commonplace, it can certainly hurt more than inserting a small needle into the arm. *See LeVine v. Roebuck*, 550 F.3d 684, 689 (8th Cir. 2008) (noting that catheterization is a painful procedure). A catheter may also carry a greater risk of infecting the recipient. *See Go Med. Indus. Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264, 1267 (Fed. Cir. 2006) ("Urinary catheters typically increase the risk of urinary tract infections because inserting a catheter can push bacteria into the normally sterile bladder."). It would be reasonable for many people to experience anxiety while enduring such an experience.

While it is possible to identify the differences between blood draws and catheterizations, it is much more difficult to articulate what legal significance, if any, these distinctions carry. "A catheter is more intrusive than a needle but less intrusive than a scalpel, making it hard to classify the procedure under an objective reasonableness inquiry." *Sparks v. Stutler*, 71 F.3d 259, 261 (7th Cir. 1995). This is due in large part to the unquantifiable, multi-factored analysis necessary in each case as well as the fact that officers do not always have to employ what later proves to be the least intrusive means available under the Fourth Amendment. *Dalia v. United States*, 441 U.S. 238, 257 & n.19, 99 S. Ct. 1682, 1693 & n.19 (1979).

Additionally, because the *Schmerber* inquiry calls on courts to balance so many considerations, predicting the outcome of many bodily search cases can be tricky. It is difficult enough to expect a reasonable police officer to differentiate between cases in which officers were allowed to hold down a suspect at the border and search his rectal cavity for heroin, *Huguez v. United States*, 406 F.2d 366, 391–92 (9th Cir. 1968), or a case in which police were allowed to pump a suspect's stomach after he admitted swallowing crack cocaine on a public street, *State v. Strong*, 493 N.W.2d 834, 837–38 (Iowa 1992), from a case wherein officers could not pump a suspect's stomach to retrieve two suspicious capsules he swallowed in front of them during an illegal home search, *Rochin v. California*, 342 U.S. 165, 166, 172, 72 S. Ct. 205, 206, 210 (1952).

Even among the few courts that have addressed the specific issue in this case, there are differing opinions. The New Jersey Superior Court refused to grant § 1983 immunity to two police officers who catheterized a DUI suspect after taking a blood draw, holding instead that a

12

factual issue existed as to whether any exigent circumstances justified the procedure. *Jiosi v. Township of Nutley*, 753 A.2d 132, 140 (N.J. Super. Ct. App. Div. 2000). Similarly, in a § 1983 case decided after the events in this case, a federal district court found that a forced catheterization, if proven, would be impermissible even though the police had obtained a warrant to extract bodily fluids because the test is so intrusive and a blood draw had already been performed. *Elliott v. Sheriff of Rush Cnty.*, 686 F. Supp. 2d 840, 859–60 (S.D. Ind. 2010). The court further held that the case fell in the "obvious" category of well-established law, preventing the officers from receiving qualified immunity under § 1983. *Id.* at 863; *see also Elliott v. Rush Mem'l Hosp.*, 928 N.E.2d 634, 643–44 (Ind. Ct. App. 2010) (finding no immunity under a state medical-malpractice statute for a hospital that forcibly catheterized a DUI suspect because there was a material fact issue as to whether catheterization was a reasonable medical procedure for obtaining a urine sample).

Compare these cases with a different decision in which another federal district court upheld a forced, warrantless catheterization that was supported by probable cause. *Ellis v. Cotten*, No. 3:06-CV-283-K, 2008 WL 4182359, at *6 (N.D. Tex. Sep. 9, 2008). The court held that the test was permissible under the Fourth Amendment despite the fact that the police simultaneously drew blood because probable cause existed. *Id.* The court there even stated that the involuntary catheterization was "remarkably similar" to the blood draw in *Schmerber*. *Id.* That this small but significant division of authority has continued to develop since the events in this case simply illustrates how difficult it would have been for Yount to know what his legal obligations were.

To summarize, "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 537 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341–43, 106 S. Ct. 1092, 1096–97 (1986)). Given the foregoing legal uncertainty as to whether a forced warrantless catheterization is constitutional, the district court should have dismissed Miller's § 1983 claim under the doctrine of qualified immunity. The law regarding involuntary, warrantless catheterizations where probable cause exists is too undeveloped, and the applicable legal principles too uncertain, to hold Yount personally liable for his actions in this case. Yount is therefore entitled to summary judgment on the § 1983 claim against him.

13

**B.** **The District Court Erred by Refusing to Dismiss Miller's Intentional Tort Claims Against Yount and the ISP**

Miller asserted claims for assault and battery against Yount for forcibly catheterizing him. He also seeks damages from the ISP under the doctrine of respondeat superior.[7] The district court believed that Yount's actions may have been unconstitutional under the Fourth Amendment, creating a factual issue for the jury as to whether the catheterization was reasonable and therefore an acceptable physical contact.

The ITCA immunizes public officials from some tort claims if the plaintiff does not show malice or criminal intent. It provides:

> [E]very governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course and scope of their employment or duties, whether arising out of a governmental or proprietary function, where the governmental entity if a private person or entity would be liable for money damages under the laws of the state of Idaho . . . .

I.C. § 6-903(a). This rule is subject to several exceptions, including one for certain intentional torts. Absent "malice or criminal intent," government employees acting within the scope of their employment are not liable for claims arising out of assault, battery, false imprisonment, false arrest, and others. *Id.* § 6-904(3). "It shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment and without malice or criminal intent." *Id.* § 6-903(e).

*1. Yount Is Immune from Miller's Battery Claim Under the ITCA*

Civil battery consists of an intentional contact with another person that is either unlawful, harmful, or offensive. *Neal v. Neal*, 125 Idaho 617, 622, 873 P.2d 871, 876 (1994). Lack of consent is a critical element of battery. *Id.*

Yount asserted in his motion for summary judgment that there was no evidence he acted with malice. All drivers in Idaho impliedly consent to BAC and drug tests upon reasonable suspicion. I.C. § 18-8002(1); *State v. Woolery*, 116 Idaho 368, 371, 775 P.2d 1210, 1213 (1989). Permissible testing is simply defined as "a procedure or test or series of procedures or tests . . . utilized to determine the concentration of alcohol or the presence of drugs or other intoxicating substances in a person." I.C. § 18-8002(9). "This Court has made it clear that 'the choice as to

---

[7] The ITCA requires plaintiffs to file tort claims directly with the agency before going to court. I.C. §§ 6-905, -908. The record does not reveal whether Miller filed a claim with the ISP before initiating this lawsuit, but the ISP has not raised the issue at any point.

14

which type of evidentiary test for concentration of alcohol, drugs or other intoxicating substances will be requested rests with the police officer, not the defendant.'" *Halen v. State*, 136 Idaho 829, 832, 41 P.3d 257, 260 (2002) (quoting *In re Griffiths*, 113 Idaho 364, 370, 744 P.2d 92, 98 (1987)). A catheterization is a urine test for drugs present in the suspect's body, and since the parties agree that there was probable cause to believe that Miller was operating a vehicle while under the influence of drugs, Miller impliedly consented to it.

Because Yount was acting during the course and scope of his employment, the burden was on Miller, as the plaintiff below, to show some evidence that Yount acted maliciously or with criminal intent. I.C. § 6-903(e); *Hunter v. State*, 138 Idaho 44, 48, 57 P.3d 755, 759 (2002). The plaintiff cannot rest on the pleadings but must show some evidence from which the court could reasonably infer the critical elements of his or her claims. *Anderson v. City of Pocatello*, 112 Idaho 176, 188, 731 P.2d 171, 183 (1986). Malice here means "the intentional commission of a wrongful or unlawful act, without legal justification or excuse and with ill will, whether or not injury was intended." *Beco Constr. Co. v. City of Idaho Falls*, 124 Idaho 859, 864, 865 P.2d 950, 955 (1993) (quoting *Anderson*, 112 Idaho at 187–88, 731 P.2d at 182–83). Criminal intent "is satisfied if it is shown that the defendant knowingly performed the proscribed acts." *Doe v. Durtschi*, 110 Idaho 466, 470, 716 P.2d 1238, 1242 (1986) (quoting *State v. Gowin*, 97 Idaho 766, 767–68, 554 P.2d 944, 945–46 (1976)).

As the district court freely acknowledged, Miller has not provided any evidence whatsoever in the form of an affidavit, deposition, or other document regarding the facts in this case. No shred of evidence suggests that Yount acted with malice or criminal intent. Since the parties in this case agree that probable cause existed for Yount to test Miller for drugs, the only reasonable inference is that he catheterized Miller pursuant to a valid criminal investigation.

Miller instead advances a legal argument to support his battery claim. He contends that Yount had the statutory right to order a blood draw only for certain serious offenses, none of which he was charged with. Idaho Code § 18-8002(6)(b) states that peace officers are empowered to order medical professionals to withdraw blood samples for certain aggravated offenses, such as aggravated DUI and vehicular manslaughter.[8] Since Miller was charged with

---

[8] This subsection provides:

> A peace officer is empowered to order an individual authorized inspection 18-8003, Idaho Code, to withdraw a blood sample for evidentiary testing when the peace officer has probable cause to believe that the suspect has committed any of the following offenses:

misdemeanor DUI, he asserts that Yount committed battery by illegally "ordering" him to submit to a test for bodily fluids. He also argues that § 18-8002 does not authorize police to order anyone to be subjected to a catheterization, only to blood draws.

However, as this Court has already expressly held, § 18-8002(6)(b) is merely a list of situations in which peace officers can order certain medical personnel to perform a blood test upon a suspect. "[A]n officer's authority to require a defendant to submit to a blood withdrawal, under I.C. § 18-8002, does not turn on whether aggravating factors are present." *Halen*, 136 Idaho at 834, 41 P.3d at 262. Anyone driving under the influence of alcohol or drugs impliedly consents to evidentiary testing for drugs or other intoxicating substances in the bloodstream regardless of whether he or she is suspected of an aggravated offense. That is, police can require all drivers to submit to drug tests if reasonable suspicion exists that they are under the influence of drugs. If medical personnel refuse to administer a drug test on a DUI suspect, the police cannot order them to do so. Section 18-8002(6)(b) is, however, an exception to the rule that law enforcement cannot order unwilling medical facilities to administer drug tests. It permits police to require medical personnel to administer blood tests in cases where a person is suspected of certain aggravated crimes. *Id.* It also does not mention urine tests whatsoever. This provision therefore has no bearing on an officer's power to require someone suspected of driving under the influence to submit to a bodily fluids test, whether for blood or urine. The district court erred by not granting summary judgment to Yount on Miller's battery claim.

> 2.   *Yount Is Immune from Miller's Assault Claim Under the ITCA*

For similar reasons, Yount is immune from Miller's assault claim. Assault is "[a]n *unlawful* threat or offer to do bodily harm or injury to another." 6A C.J.S. *Assault* § 6 (2010)

---

> (i) Aggravated driving under the influence of alcohol, drugs or other intoxicating substances as provided in section 18-8006, Idaho Code;
>
> (ii) Vehicular manslaughter as provided in subsection (3)(a), (b) and (c) of section 18-4006, Idaho Code;
>
> (iii) Aggravated operating of a vessel on the waters of the state while under the influence of alcohol, drugs or other intoxicating substances as provided in section 67-7035, Idaho Code; or
>
> (iv) Any criminal homicide involving a vessel on the waters of the state while under the influence of alcohol, drugs or other intoxicating substances.

I.C. § 18-8002(6)(b). Medical personnel can still refuse to administer the blood draw for safety or health reasons, including concerns about the suspect's wellbeing. *Id.* § 18-8002(6)(e).

(emphasis added). As explained above, Yount had a statutory right to test Miller's urine, and Miller has provided no evidence whatsoever that Yount otherwise acted with malice or criminal intent. Under the ITCA, Yount is immune from suit for an assault. The district court erred in refusing to grant summary judgment to Yount on the assault claim.

   3. *The ISP Is Not Liable for Assault or Battery Under the Doctrine of Respondeat Superior*

Because Yount is not liable for any intentional torts against Yount, the ISP is not vicariously liable either. The ITCA provides:

> Except as otherwise provided in this act, every governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course and scope of their employment or duties, whether arising out of a governmental or proprietary function, *where the governmental entity if a private person or entity would be liable for money damages under the laws of the state of Idaho . . . .*

I.C. § 6-903(a) (emphasis added). As explained in the previous two subsections, Yount is immune from suit for battery or assault under the ITCA. He is not "liable for money damages under the laws of the state of Idaho." Hence, the ISP, by extension, cannot be liable for these intentional torts. The district court should have granted summary judgment to the ISP on Miller's assault and battery claims.

**C. There Is No Issue of Material Fact Supporting Miller's Claims Against Yount or the ISP for Negligence**

Miller brought negligence claims against Yount and the ISP for negligently ordering him to undergo a catheterization.

   1. *Miller Has Not Raised an Issue of Material Fact in Support of His Negligence Claim Against Yount*

Miller has not presented evidence creating a genuine issue of fact regarding whether Yount negligently allowed him to be harmed. Under the ITCA, Yount can be liable for not exercising ordinary care and proximately causing injury to Miller during the course of his duties. *Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 116 Idaho 326, 775 P.2d 640 (1989). "In determining whether a party is negligent, his or her conduct is judged against that of an ordinarily prudent person acting under the same conditions and circumstances." *Sorensen v. St. Alphonsus Reg'l Med. Ctr., Inc.*, 141 Idaho 754, 761, 118 P.3d 86, 93 (2005). Without any evidence to support his allegations, Miller has not created a genuine issue of material fact

showing how Yount acted without ordinary care. Miller's negligence claim against Yount should have been dismissed.

2. *The ISP Is Not Liable for Yount's Negligence Under the Doctrine of Respondeat Superior*

Again, the ITCA states that a government entity is liable for the negligence of its employees only where a government entity or a private individual would be liable for money damages under state law. I.C. § 6-903(a). Since Miller provides no evidence to support his negligence claim, Yount is not liable under that theory and therefore neither is the ISP. The district court should have granted summary judgment to the ISP on Miller's negligence claim.

**D.      There Is No Issue of Material Fact Supporting Miller's Claims Against the ISP for Negligent Supervision**

Similarly, there is no material issue of fact supporting Miller's claim for negligent supervision. The State can be liable for its negligence in managing its employees, but the plaintiff must "present evidence to raise a genuine issue of material fact concerning whether those who had the duty to supervise should have reasonably anticipated that those subject to their supervision would commit [a compensable tort]." *Kessler v. Barowsky*, 129 Idaho 647, 654, 931 P.2d 641, 648 (1997); *see also Doe v. Durtschi*, 110 Idaho 466, 473, 716 P.2d 1238, 1245 (1986) (holding that state entities can be liable for negligent supervision). Miller has not presented any evidence at all showing that the ISP failed to properly supervise Yount. The district court should have granted summary judgment to the ISP on this claim.

## VI. CONCLUSION

Trooper Yount was entitled to qualified immunity against Miller's § 1983 claim for violating his Fourth Amendment rights. There are no genuine issues of material fact supporting Miller's tort claims against Yount and the ISP. Accordingly, the district court's Memorandum Decision and Order on Cross Motions for Summary Judgment is vacated. The case is remanded with instructions to enter judgment in favor of Appellants. No attorney fees are awarded because none were requested. Costs to Appellants.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON **CONCUR.**

18