## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 31668

|  |  |
|---|---|
| BAIRD OIL COMPANY, INC., | ) |
| | ) |
| Plaintiff-Appellant, | ) 2007 Opinion No. 68 |
| | ) |
| v. | ) Boise, February 2007 Term |
| | ) |
| THE IDAHO STATE TAX COMMISSION, | ) Filed: May 1, 2007 |
| | ) |
| Defendant-Respondent. | ) Stephen W. Kenyon, Clerk |
| | ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

The district court decision reversing the Idaho State Tax Commission is affirmed.

Runft & Steele Law Offices, PLLC, Boise, for appellant. Jon M. Steele argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Carl E. Olsson, Deputy Attorney General, argued.

---

TROUT, Justice

Baird Oil Company (Baird) appeals a decision by the district court finding Baird's claim against the Idaho State Tax Commission (the Commission) barred pursuant to the doctrine of *res judicata*.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

This case originated with a claim by Baird requesting a refund of fees Baird paid into the Idaho petroleum clean water trust fund (the Fund). The Fund was established pursuant to the Idaho Petroleum Clean Water Trust Fund Act, I.C. §§ 41-4901, et seq. (the Act) and is funded in part by a one cent per gallon transfer fee paid by petroleum distributors in Idaho.[1] The

---

[1] These transfer fees were declared to be a tax and found to be unconstitutional in *V-1 Oil Co. v. Idaho Petroleum Clean Water Trust Fund,* 128 Idaho 890, 920 P.2d 909 (1996). The Act has since been amended and no issues are raised in this appeal about the validity of the transfer fees.

1

Commission collects the transfer fees and then deposits those amounts into the Fund. The Act also provides:

> The director [of the Department of Insurance] shall certify to the commission when the unencumbered balance in the trust fund equals thirty million dollars ($30,000,000). Effective the first day of the second month following the date of such certification, the imposition of the transfer fee shall be suspended. Thereafter, the director shall certify to the commission when the unencumbered balance in the trust fund equals twenty million dollars ($20,000,000). Effective the first day of the second month following the date of such certification, the imposition of the transfer fee shall be reinitiated.

I.C. 41-4908(10).[2] Thus the payment of transfer fees by the petroleum distributors is regulated according to the unencumbered balance in the Fund.

On August 27, 1999, the Director of the Department of Insurance (the Director) certified to the Commission that the balance in the Fund had reached $30,000,000. On October 1, 1999, the Commission then notified the petroleum distributors of that fact and suspended the payment of transfer fees into the Fund until further notice. Baird, together with the Idaho Petroleum Marketers Association (the Association) had been carefully monitoring the amount of money in the Fund, believing there might be some time lapse between the time the Fund actually reached $30,000,000 and the time when the Commission notified the distributors they no longer had to pay the transfer fees. Specifically, Baird and the Association contend the balance exceeded the cap amount of $30,000,000 either in late 1998 or early 1999.

On September 6, 2000, the Association sent a letter to the Commission requesting a declaratory ruling regarding when the Director should have properly certified that the Fund balance had been reached and requesting a refund of the overpayment of the transfer fee. The Commission issued a declaratory ruling by letter on November 1, 2000 and framed the issue presented by the Association as follows: "Are Idaho fuel distributors who paid the Idaho Petroleum Transfer Fee prior to its suspension on October 1, 1999, entitled to any refund of the fee paid for periods before the suspension?" The Commission determined that according to the applicable statutes, the Commission had no authority to conduct an independent audit and was not entitled to suspend the fees until such time as the Director certified to it that the cap had been reached. Because the Director did not do so until August of 1999, the Commission concluded that the suspension of the transfer fee as of October 1, 1999 was in compliance with the statute.

---

[2] This statute has since been amended and is now I.C. § 41-4909.

Further, the declaratory ruling stated, "The members of the Association are therefore not entitled to a refund of transfer fees paid for periods before October 1, 1999, on the grounds that the suspension should have occurred on an earlier date."

The Association then filed a petition for judicial review with the district court, arguing that the Commission had a duty to audit the Fund and determine independently of the Director whether the transfer fees should be collected. Although it does not appear in the record before this Court and could not be explained by counsel during oral argument, Baird apparently intervened and became a party to the judicial review proceeding before the district court. Baird then had the opportunity to present its views on the issues raised by the declaratory ruling being appealed. On June 4, 2001, Judge Wilper entered a Memorandum and Decision and Order in the proceeding, which named the Association and Baird as appellants against the Commission. Judge Wilper affirmed the Commission's interpretation of the Act, finding that the Commission had no authority to audit the Fund and could not suspend the transfer fees until the Director certified that the cap had been reached. Neither Baird nor the Association appealed from this decision.

In January of 2002, Baird filed a formal request with the Commission for a refund of fees pursuant to I.C. § 63-2410(4). Again, Baird asserted that despite the fact the Fund had reached $30,000,000, the Commission continued to collect the fees and therefore, Baird was entitled to a refund in the amount of $61,456. On January 29, 2002, Baird's request was denied. Baird then filed a petition for re-determination with the Commission. The Commission issued a decision on December 4, 2002, affirming its prior decision. On July 15, 2003, Baird filed a petition for judicial review in district court, asking the court to reverse the Commission's decision and enter an order that it was entitled to a refund of fees. The district court ruled that Baird's action was barred on the principles of *res judicata* due to Judge Wilper's June 4, 2001 decision and, therefore, Baird was not entitled to make further argument or claim for a refund. Baird now appeals from that decision.

## II.

## STANDARD OF REVIEW

Whether an action is barred by *res judicata* or collateral estoppel is a question of law over which this Court exercises free review. *Lohman v. Flynn*, 139 Idaho 312, 320, 78 P.3d 379, 287 (2003); *State v. Rhoades*, 134 Idaho 862, 863, 11 P.3d 481, 482 (2000).

## III.

## DISCUSSION

### A. *Res judicata*

"*Res judicata*" is comprised of claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel)." Under the principles of claim preclusion, a valid final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties upon the same claim." *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002).

The district court ruled that Baird's current request for a refund is barred by *res judicata*, explaining that Judge Wilper had already rendered a final judgment on the issue of whether Baird was entitled to a refund. In determining whether the earlier decision is indeed a bar to this appeal, it's important to point out the issues resolved in the earlier appeal. Judge Wilper concluded the Commission had no statutory duty to audit the Fund and was correct in waiting until the Director certified to the Commission that the cap had been reached. Based upon that interpretation, there was no overpayment and no basis for a refund. Baird fully participated in the appeal when it intervened and was a party to the decision that the Commission properly stopped collecting the transfer fees on October 1, 1999. Baird did not appeal that determination although it could have.

We agree with the Commission's argument on appeal that there are basically two issues to be resolved in a tax refund case: (1) whether there is any basis for asserting a right to a refund, and (2) the amount of the refund. The first issue was litigated in the earlier case and resolved by Judge Wilper's decision. Baird's efforts now to seek a particular refund amount are unavailing, as the issue of whether Baird has any entitlement to a refund depends on whether the Commission properly suspended collection of the transfer fees on October 1, 1999. That issue was previously resolved and Baird is barred from litigating that issue further. We affirm the

district court's conclusion that Baird is barred from re-litigating entitlement to a refund. For this reason, we do not reach any other arguments raised by Baird which go to the merits of the earlier determination.

Baird also argues that the Commission waived its right to rely on *res judicata* when it entered a stipulation to stay the claims of other petroleum distributors. The stipulation was entered into while Baird's petition for re-determination in the second administrative proceeding was pending. Counsel for Baird and for the Commission agreed to proceed with the Baird refund case through the administrative and appeal stages and to stay the pending refund claims of other petroleum distributors until the Baird matter was finally resolved. It is now Baird's argument that the Commission was agreeing in the stipulation that Baird's refund claim would be considered on the merits and was giving up any right to assert other defenses such as *res judicata*. "In order to establish waiver, the intention to waive must clearly appear…." (citations omitted) *Riverside Dev. Co. v. Ritchie,* 103 Idaho 515, 520, 650 P.2d 657, 662 (1982). We find based on the record before us that this was not a waiver at all. Rather, the Commission was simply agreeing that it would go forward with the case against Baird first, and obtain a resolution through appeal.

## B. Attorney's fees and costs on appeal

Baird seeks attorney's fees and costs pursuant to I.C. § 12-117, § 12-120(3), § 12-121 and § 63-3049(d). Baird is not the prevailing party on appeal, and therefore, it is not entitled to fees or costs.

## IV.
## CONCLUSION

The district court's decision that Baird's claim is barred by *res judicata* is affirmed. We award costs on appeal to the Commission.

Chief Justice SCHROEDER and Justices BURDICK and SCHILLING, Pro Tem, **CONCUR.**

Justice EISMANN, **SPECIALLY CONCURRING**.

I concur in the majority opinion, and write only to point out that Baird followed the wrong procedure in seeking its refund of the transfer fees it paid.

5

The tax at issue is the transfer fee imposed by the Idaho Petroleum Clean Water Trust Fund Act, I.C. § § 41-4901 *et seq.* Those fees were required by statute to be deposited into the Idaho petroleum clean water trust fund.[3] The statute creating the trust fund mandated that a portion of the fees be deposited into the state refund account to pay any claims for a refund of the transfer fees. All refunds of the transfer fees collected under the Act were to be paid from that refund account. The statute provided:

> From the receipts of the transfer fee, an amount of money shall be distributed to the state refund account established under section 63-3067, Idaho Code, sufficient to reimburse that account for all refund claims paid from that account. *Any refunds due and owing from the commission shall be paid from the state refund account and those moneys are hereby continuously appropriated for that purpose.*[4]

As stated in the above-quoted statute, the state refund account is created by Idaho Code § 63-3067. The refund account was "created for the purpose of repaying overpayments, . . . and for the purpose of paying any other erroneous receipts illegally assessed or collected, . . . and taxes and licenses unjustly assessed, collected or which are excessive in amount."[5] The statute further provides, "Claims for, and payment of refunds under the provisions of this section shall be made in the same manner as other claims against the state of Idaho."[6] The manner for making other claims against the state of Idaho is set forth in Idaho Code § 67-1023. It requires presenting the claim to the state controller within two years after the claim accrued. That statute states:

> **67-1023. Claims against the state. –** All persons having claims against the state must exhibit the same, with the evidence in support thereof, to the state controller, to be examined, settled and allowed by the board of examiners, within two (2) years after such claims shall accrue, and not afterward. In all suits brought in behalf of the state, no debt or claim must be allowed against the state as a set-off but such as have been exhibited to the state controller, and allowed or disallowed by the board of examiners except only in cases where it is proved to the satisfaction of the court that the defendant, at the time of the trial, is in possession of vouchers which he could not produce to the state controller, or that he was prevented from exhibiting the claim to the state controller by absence from the state, sickness, or unavoidable accident. No claim which is not provided for by law shall be examined or set off.

---

[3] Ch. 119, § 1, 1990 Idaho Sess. Laws 266, 276-77 (formerly codified as 41-4909 and now codified as 41-4910).

[4] *Id* (emphasis added).

[5] I.C. § 63-3067(2)(a).

[6] *Id*.

Baird did not follow the procedure set forth in Idaho Code § 67-1023 when seeking its claim for a refund of the transfer fees it paid.  Therefore, its claim could have been denied for that reason also.

Baird sought its refund pursuant to Idaho Code § 63-2410(4).  That subsection provides:

> Any licensed distributor paying the gasoline tax and/or aircraft engine fuel tax to the state of Idaho erroneously shall be allowed a credit or refund of the amount of tax paid by him if a written claim for refund is filed with the commission within three (3) years after the date those taxes were paid.  Such credit or refund shall include interest at the rate established in section 63-3045, Idaho Code, computed from the date taxes to be refunded or credited were paid to the commission.

It applies only to the gasoline and aircraft engine fuel taxes imposed in Chapter 24 of Title 63, Idaho Code.  It does not apply to a refund of the transfer fee imposed by the Idaho Petroleum Clean Water Trust Fund Act.