IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 38724

| | | |
|---|---|---|
| REX RAMMELL and LYNDA RAMMELL, husband and wife, | ) ) ) | |
| Plaintiffs-Counterdefendants-Appellants, | ) ) | Boise, August 2012 Term |
| v. | ) ) | 2012 Opinion No. 122 |
| STATE OF IDAHO; JAMES E. RISCH, acting governor; STEVEN HUFFAKER, Department of Fish and Game, | ) ) ) ) | Filed: September 14, 2012 Stephen W. Kenyon, Clerk |
| Defendant-Counterplaintiff-Respondent. | ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. The Honorable Cheri C. Copsey, District Judge.

The judgment of the district court is affirmed.

Patrick D. Furey, Boise, for appellants.

Hon. Lawrence G. Wasden, Attorney General, Boise, and Lopez & Kelly, PLLC, Boise, for respondents. Michael E. Kelly, argued.

_____

J. JONES, Justice.

This is an appeal from the district court's grant of summary judgment in favor of the State of Idaho, former Governor James E. Risch, and former Fish and Game Department Director Steven Huffaker (collectively "Defendants"). Appellants, Rex and Lynda Rammell, the owners of a domestic elk ranch, initiated this action against Defendants to recover for the loss and destruction of elk that escaped from their ranch in 2006. We affirm the judgment of the district court.

## I.
### FACTUAL AND PROCEDURAL HISTORY

In early August of 2006, approximately 135 domestic elk kept on the Rammells' property escaped. On August 14, 2006, a neighbor of the Rammells contacted Dr. Debra Lawrence, an employee of the Idaho Department of Agriculture, to inform her of the animals' escape. Dr.

Lawrence immediately informed the Rammells that their elk had escaped from their property. After receiving notice of the escape, the Rammells took various measures to capture the escaped animals and maintained their efforts until mid-October of 2006.

On September 7, 2006, Governor Risch issued Executive Order 2006-32, observing that the elk had escaped their owner's control for more than seven days and proclaiming that the escape of the elk presented "an imminent threat to public health and safety of the citizens of Idaho as well as neighboring states." The Executive Order called for the Idaho Department of Fish and Game and the Idaho Department of Agriculture to "shoot on site any domestic elk" that had escaped from the Rammells' property. Governor Risch also called upon the Idaho Fish and Game Commission (Commission) to promulgate an emergency rule or proclamation to allow licensed hunters to "identify and shoot on site" domestic elk that had escaped from the Rammells' property. The Rammells were informed of Executive Order 2006-32 on September 8, 2006. Director Huffaker responded on behalf of the Commission by issuing Order 06-43, which declared an emergency and provided for a depredation hunt for the elk from September 19, 2006 through December 15, 2006. Order 06-43 specifically provided that "escaped domestic elk may be taken by eligible licensed hunters."

No exact number has ever been calculated as to how many of the Rammells' domestic elk escaped in early August of 2006. However, the Rammells estimate that approximately 135 head escaped. It is well documented that the Rammells were able to capture sixty-one of the elk. The sixty-one captured elk were placed in the custody of the Idaho Department of Agriculture and quarantined. Of the sixty-one animals placed in the custody of the Department of Agriculture, thirteen were reported missing by the Rammells and one was found dead after the quarantine was lifted.[1] Forty-three of the escaped domestic elk were taken pursuant to Order 06-43, and approximately thirty-one of the domestic elk apparently remained at large.

The Rammells initiated this action on February 26, 2007. In their initial Complaint they alleged eight separate counts for relief including: one count for deprivation of property without due process of law in violation of both the United States Constitution and Idaho's Constitution; one count based on the "taking" of property without a reasonable public purpose and without just compensation in violation of the United States Constitution and Idaho's Constitution; four counts

---

[1] The Rammells have not asserted a claim against any of the Defendants based on the law of bailments with regard to the thirteen missing elk.

of civil rights violations under 42 U.S.C. § 1983; and two tort claims under the Idaho Tort Claims Act for destruction of property and interference with contractual and business relationships. In response, Defendants filed a motion to dismiss, which was denied as to the Rammells' due process and takings claims, but granted as to the remaining six counts.[2]

The Rammells then moved to amend their Complaint,[3] and received leave of court to do so. The Rammells' First Amended Complaint alleged seven counts nearly identical to those in the initial Complaint: first, that Defendants violated their constitutional rights by depriving them of their property without due process; second, that Defendants violated the Rammells' right to equal protection by arbitrarily taking their property without a public purpose or just compensation; the five remaining counts were all predicated on 42 USC § 1983 and alleged (1) violations of substantive due process; (2) the taking of property without just compensation; (3) an equal protection claim; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress.

Defendants then moved for summary judgment. After a hearing on the Defendants' motion, the district court dismissed all of the Rammells' 42 USC § 1983 claims on the basis of qualified immunity. After further argument at the same hearing, the court dismissed the Rammells' takings claim because the district court found that, "the State did not violate the takings clause… of either the state or federal constitution." Lastly, the equal protection claim was dismissed due to factual insufficiency. Subsequent to dismissal, the court awarded Defendants their costs and attorney fees pursuant to I.C. § 12-117 and I.R.C.P. 11. The Rammells filed a timely appeal to this Court.

---

[2] In its order dismissing the § 1983 claims, the district court footnoted that the Rammells had failed to allege they had exhausted all available procedures for obtaining compensation before bringing their § 1983 claims against Risch and Huffaker and had also failed to allege that Idaho law did not provide an adequate process for obtaining compensation. In their briefing to this Court, neither party has addressed the procedure provided in I.C. § 67-1023, for presentation of claims against the State. Under I.C. § 67-1023, "[a]ll persons having claims against the state must exhibit the same, with the evidence in support thereof, to the state controller, to be examined, settled and allowed by the board of examiners, within two (2) years after such claims shall accrue, and not afterward." Justice Eismann noted this procedure for presentation of claims against the State in his special concurrence in *Baird Oil Co. v. Idaho State Tax Comm'n*, 144 Idaho 229, 233, 159 P.3d 866, 870 (2007).

[3] Rex Rammell admitted to the district court that the reason for seeking an amendment was to avoid the district court's earlier order dismissing the majority of the Rammells' claims.

## II.
## ISSUES ON APPEAL

I. Does I.C. § 25-3705A(3) provide authorization for the State to legally "take" escaped domestic cervidae?

II. Does a genuine issue of material fact exist under IDAPA 02.04.19.204.05?

III. May the State deny compensation to the owners of escaped domestic elk taken under the conditions of I.C. § 25-3705A(3)?

IV. Was the district court's grant of summary judgment as to the Rammells' § 1983 claims against Risch and Huffaker proper?

V. Was the district court's award of attorney's fees under I.C. § 12-117 an abuse of discretion?

VI. Are the Defendants entitled to an award of attorney fees under I.C. § 12-117 for the Rammells' pursuit of this appeal?

## III.
## DISCUSSION

### A. Standard of Review.

In an appeal from summary judgment, this Court employs the same standard as the district court. *Cnty. of Boise v. Idaho Cntys. Risk Mgmt. Program, Underwriters*, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court exercises free review over questions of law. *Cnty. of Boise*, 151 Idaho at 904, 265 P.3d at 517. We review the district court's award of attorney's fees predicated on I.C. § 12-117 for an abuse of discretion. *City of Osburn v. Randel*, 152 Idaho 906, 908, 277 P.3d 353, 355 (2012).

### B. Idaho Code § 25-3705A(3) provides the State authority to legally take escaped domestic cervidae.

All of the Rammells' claims are premised on the contention that the State actors had no legal authority to take or permit the taking of their elk and, even if such authority existed, they are entitled to recover compensation for the taking. We first consider this foundational argument.

The district court found that I.C. § 25-3705A(3) was constitutional and provided adequate legal authority for the State to take the Rammells' elk without incurring an obligation to pay compensation. On appeal, the Rammells contend that I.C. § 25-3705A(3) simply does not grant the State or its agents the authority to issue a take order for escaped domestic elk. In response, Defendants argue that the State and its agents did have the authority to issue the take order and

4

carry out the depredation hunt, either under the terms of I.C. § 25-3705A(3) or under the State's power to abate a public nuisance.

Defendants are correct in their assertion that Order 06-43, issued by Director Huffaker on behalf of the Commission, properly authorized the taking of the elk. That is, Order 06-43 satisfied the conditions set out in I.C. § 25-3705A(3), was issued within the authority of the Commission and its director under Title 36 of the Idaho Code, and provided proper authorization for a legal taking of the escaped domestic elk.

Idaho Code § 25-3705A(3) provides that:

> Any domestic cervidae,[4] that have escaped the control of the owner or operator of a domestic cervidae farm or ranch for more than seven (7) days, taken by a licensed hunter in a manner which complies with title 36, Idaho Code, and the rules and proclamations of the Idaho fish and game commission shall be considered a legal taking and neither the licensed hunter, the state, nor any state agency shall be liable to the owner for killing the escaped domestic cervidae.

On appeal, the Rammells have not challenged the constitutionality of I.C. § 25-3705A(3). Nor has either party argued that the statute is ambiguous. Rather, each party adheres to different interpretations of what the statute means.

The Rammells believe that the statute's meaning is unmistakable–if an elk rancher does not recapture his escaped elk within seven days, and a licensed hunter happens thereafter to kill one during the regular hunting season, the rancher cannot complain. Conversely, Defendants assert that the statute creates a clearly delineated process by which the State can legally "take"[5] any domestic cervidae beginning on the eighth day after they have made good on their escape.

The plain language of I.C. § 25-3705A(3) supports Defendants' argument that the statute provides authorization for the State to legally take escaped domestic cervidae. Idaho Code § 25-3705A(3) expressly provides that the take of domestic cervidae, seven days after escape, is legal and that no liability for the hunter, the State or any State agency will attach if the conditions of the statute are satisfied.

In addition to the plain language, three additional considerations of the terms chosen by the Legislature in I.C. § 25-3705A(3) negate the Rammells' reading of the statute. First, is the

---

[4] Cervidae refers to a large family of ruminant mammals that are distinguished from Bovidae by possession of solid deciduous antlers and that include deer, elk, and moose. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 367 (3d ed. 1966).

[5] Title 36 of the Idaho Code, which controls the manner in which I.C. § 25-3705A(3) is executed provides, that "take" means to "hunt, pursue, catch, capture, shoot, fish, seine, trap, kill, or possess or any attempt to so do." I.C. § 36-202.

seven-day time period provided in the statute. If the Legislature had intended to only immunize hunters based on the accidental killing of domestic elk, it would have done so expressly and without a time limitation. An escaped domestic elk is practically indistinguishable from a wild elk, both on the first day of its escape from captivity and on its eighth day. Second, the fact that the Legislature included immunity for both the State and any State agency with respect to the taking of any domestic cervidae indicates that the Legislature was not concerned just with the accidental killing of domestic elk by licensed hunters when it drafted I.C. § 25-3705A(3). Third, all hunting performed by hunters during the regular hunting season is presumed to be done in compliance with Title 36. Thus, the language "taken by a licensed hunter in a manner which complies with title 36, Idaho Code," would be superfluous if the Rammells' accidental killing interpretation was correct.

Before escaped domestic cervidae may be legally taken, I.C. § 25-3705A(3) requires that (1) they must have been escaped for more than seven days, (2) they must be taken by a licensed hunter, and (3) the taking must be in a manner that complies with Title 36 of the Idaho Code, as well as the rules and proclamations of the Idaho Fish and Game Commission. Because I.C. § 25-3705A(3) is constitutional and was enacted to address the escape of domestic cervidae when the statute's conditions are satisfied, the State may legally take the escaped animals without liability.

In this case, the Rammells' domestic elk had escaped at least thirty-four days before Director Huffaker issued Order 06-43. The Rammells have presented no facts indicating that their domestic elk were taken by any non-licensed hunters. The hunt of the Rammells' domestic elk was effectuated in a manner that complied with Title 36. Idaho Code § 36-106 grants the Director of Fish and Game the power, acting pursuant to authority delegated by the Commission, to declare an open season upon a species of wildlife to reduce its population in order to protect property from damage. I.C. § 36-106(e)(6)(B). To achieve this, the Director must issue an "order embodying his findings in respect to when, under what circumstances, in which localities, by what means... wildlife subject to the hunt may be taken." I.C. § 36-106(e)(6)(B). Order 06-43, issued by Director Huffaker specifically relies on I.C. § 36-106 and meets all the requirements set out in I.C. § 36-106(e)(6)(B), including a provision allowing for the declaration of an emergency to give immediate effect to the order. Accordingly, the taking of the Rammells' escaped domestic elk was conducted in a manner that complied with Title 36. And, there is absolutely nothing in the record to indicate that the taking did not occur in a manner which

6

complies with the rules and proclamations of the Idaho Fish and Game Commission. Thus, all the requirements of I.C. § 25-3705A(3) were satisfied in this case, authorizing the State to legally take the Rammells' escaped domestic elk without liability.

**C. IDAPA 02.04.19.204.05 is irrelevant to the determination of this case.**

The Rammells argue that the district court's entry of summary judgment was improper because a genuine issue of material fact existed as to whether a reasonable period of time passed before the State initiated efforts to recapture or take their elk. The Rammells' argument relies on IDAPA 02.04.19.204.05, entitled "capture," which states:

> In the event that the owner or operator of a domestic cervidae ranch is unable to retrieve escaped domestic cervidae in a timely manner, as determined by the Administrator, the Administrator may effectuate the capture of the escaped domestic cervidae to ensure the health of Idaho's livestock and wild cervidae populations.

The Rammells insist that whether their efforts to capture were occurring in a "timely manner" is a question of fact that must be decided by a jury. Defendants rely on I.C. § 25-3705A(3) to refute the Rammells' contention, and assert that the statute's seven-day period is the period allowed for the recapture of escaped domestic cervidae before the State may act to remedy the situation.

The Rammells' argument is irrelevant to the determination of this case because, IDAPA 02.04.19.204.05 governs the conduct of the Administrator of the Idaho Department of Agriculture, not the Governor or the Director of the Department of Fish and Game. In this case, it was Governor Risch and Director Huffaker who acted pursuant I.C. § 25-3705A(3), making the "timely manner" requirement of IDAPA 02.04.19.204.05 irrelevant. Given that IDAPA 02.04.19.204.05's "timely manner" requirement only governs the conduct of the Administrator of the Idaho Department of Agriculture, who is not a party to this case, the provision cannot affect the outcome of this case. Furthermore, the immunity provided under I.C. § 25-3705A(3) is in no way affected by this or any other administrative rule.[6] Thus, whether the Rammells were retrieving their escaped domestic elk in a "timely manner" is not a material issue.

---

[6] *See Mead v. Arnell*, 117 Idaho 660, 666, 791 P.2d 410, 416 (1990) ("[A]dministrative regulations and rules do not supplant statutory law nor do they preempt judicial statutory interpretation.").

**D.    The State may deny compensation to the owners of escaped domestic elk taken under the terms allowed for in I.C. § 25-3705A(3).**

The district court dismissed the Rammells' Fifth Amendment takings claim on two independent bases—abatement of a public nuisance and I.C. § 25-3705A(3), which it determined was a legislative carve-out from just compensation requirements, allowing the State to take escaped domestic cervidae without liability. On appeal, the Rammells merely cite the Fifth Amendment of the U.S. Constitution and claim that the Defendants unlawfully deprived them of their property without just compensation.

Although not cited or asserted in their just compensation argument, elsewhere in their briefing the Rammells cite I.C. § 25-3707, which establishes property rights in domestic cervidae. That section provides:

> Domestic cervidae shall be, together with their offspring and increases the subject of ownership, lien and absolute property rights, (the same as purely domestic animals) in whatever situation, location, or condition such animals may thereafter become, or be, and regardless of their remaining in, or escaping from such restraint or captivity.

This provision certainly grants property rights in domestic cervidae. However, the Rammells overlook the fact that such property rights are subject to and conditioned upon I.C. § 25-3705A and that when owners of the animals allow them to remain at large for more than seven days after an escape, the property rights must give way to the State's ability, acting pursuant to I.C. § 25-3705A(3), to take the animals without liability.

Under the terms of I.C. §25-3705A(3), licensed hunters, the State, and all state agencies are immune for the killing of escaped domestic cervidae, so long as the killing complies with I.C. §25-3705A(3). In this case, all of the requisite conditions of the statute were satisfied, immunizing Defendants from liability to the Rammells.

**E.    The district court's grant of summary judgment as to the Rammells' § 1983 claims against Risch and Huffaker was proper.**

The district court twice dismissed all of the Rammells' 42 USC § 1983 claims–once prior to granting them leave to amend their complaint, and then again after they submitted their First

Amended Complaint. In both instances, the district court found that the Rammells' § 1983 claims against Risch and Huffaker[7] were barred by qualified immunity.

The Rammells argue that genuine issues of material fact exist regarding their § 1983 claims against Risch and Huffaker that preclude the entry of summary judgment. Specifically, they argue that before qualified immunity can be invoked there must be a determination of reasonableness under the circumstances, which is a jury question. The Rammells' argument that the individual defendants' conduct was unreasonable relies on their accidental-killing interpretation of I.C. § 25-3705A(3), which we reject.

The Rammells' § 1983 claims against Risch and Huffaker are barred by qualified immunity. In Idaho, state officials can avail themselves of qualified immunity from § 1983 claims if they followed a reasonable interpretation of the law at issue. *Miller v. Idaho State Patrol*, 150 Idaho 856, 864, 252 P.3d 1274, 1282 (2011). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* at 869, 252 P.3d at 1287. "If a government official violates the claimant's constitutional rights, qualified immunity generally turns on the objective reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* at 864, 252 P.3d at 1282. Thus, courts addressing qualified immunity defenses must address two issues: "(1) whether, accepting the plaintiff's assertions as true, the defendant invaded the plaintiff's constitutional rights; and (2) whether the defendant acted reasonably given the state of American law at the time." *Id.* "Legal uncertainty" at the time of the official's conduct provides adequate grounds for a finding of qualified immunity. *Id.* It is in each individual court's discretion which of these issues to approach first. *Id.*

In this case, the Defendants did exactly what the statute on its face said they could do. When Risch and Huffaker acted pursuant to I.C. § 25-3705A(3), no appellate court in this State had ruled that the statute did not mean exactly what it says. Likewise, no appellate court in this State or other controlling authority had ruled that the statute was unconstitutional, and the Rammells do not challenge its constitutionality. Given the state of the law when Risch and

---

[7] The Rammells' § 1983 claims were asserted against Risch and Huffaker in their individual capacities. The district court correctly noted that suits for damages against the State and its officials, acting in their official capacities, are barred by the Eleventh Amendment to the United States Constitution. *Arnzen v. State*, 123 Idaho 899, 903–04, 854 P.2d 242, 246–47 (1993).

Huffaker acted, the district court's dismissal of the Rammells' § 1983 claims on the basis of qualified immunity was proper.

**F.     The district court did not abuse its discretion by awarding attorney fees to Defendants under I.C. § 12-117.**

The district court, pursuant to I.C. § 12-117 and I.R.C.P. 11, awarded Defendants $49,202.50 in attorney fees, and costs as a matter of right in the amount of $1,559.26. The district court found that: the Defendants were the prevailing party, the Rammells pursued their case without a reasonable basis in law or fact, and the Rammells violated I.R.C.P. 11(a)(1). The Rammells insist that the only explanation for the award is that the district court harbored ill will toward them or their business. Furthermore, the Rammells contend that the award of attorney's fees by the district court was "plain error." Defendants argue that all of the Rammells' claims were dismissed because they lacked any factual or legal basis, and therefore attorney's fees were proper under I.C. § 12-117.

Idaho follows the "American Rule" regarding attorney fees, which requires parties to pay their own attorney fees unless a specific statutory or contractual authority supports shifting fees to the opposing party. *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 447–48, 235 P.3d 387, 397–98 (2010). Idaho Code § 12-117 is such a provision. It states:

> [I]n any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117. A district court's imposition of attorney fees pursuant to I.C. § 12-117 is reviewed by this Court for an abuse of discretion. *City of Osburn v. Randel*, 152 Idaho 906, 908, 277 P.3d 353, 355 (2012). Where the district court "act[s] within the bounds of its discretion and reache[s] its decision through an exercise of reason" an abuse of discretion will not be found. *Id*. at 910, 277 P.3d at 357. Essentially, I.C. § 12-117 requires and award of fees and costs to a prevailing party where the nonprevailing party acted without a reasonable basis in fact or law. *Id*. at 909, 277 P.3d at 356. Therefore, two issues must be resolved: (1) who is the prevailing party and (2) did the nonprevailing party act without a reasonable basis in fact or law. *See id*. at 908, 277 P.3d at 355.

10

Idaho's Rules of Civil Procedure address how to determine a prevailing party. "In any civil action the court may award reasonable attorney fees… to the prevailing party or parties as defined in Rule 54(d)(1)(B)." I.R.C.P. 54(e)(1). Rule 54(d)(1)(B) provides that "[i]n determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties." I.R.C.P. 54(d)(1)(B).

The district court did not abuse its discretion by finding that Defendants were the prevailing party in this matter because it properly considered the final judgment in relation to the relief sought by the parties before holding that Defendants prevailed. In its Order Granting Costs and Fees in Part, the district court noted that the Rammells prevailed on absolutely no issue and that, based on the record as a whole, Defendants were the prevailing party.

Furthermore, the district court did not abuse its discretion by finding that the Rammells, the nonprevailing party, pursued their claims without a reasonable basis in law or fact. The court found that based on the record, "the Rammells both brought these claims and pursued them without a reasonable basis in law or fact." In reaching this conclusion, the district court relied on the following: (1) the Rammells were warned by the district judge at a hearing prior to granting their motion to amend, that if the amended complaint did not assert any new factual bases for their claims, an award of attorney fees for Defendants was likely; (2) the Rammells' First Amended Complaint re-alleged five civil rights claims under 42 USC § 1983 that were nearly identical to the claims that had already been dismissed on the basis of qualified immunity; and (3) the Rammells' claim in their First Amended Complaint–that Defendants' conduct, in taking their domestic elk, was motivated by ill will towards the Rammells themselves and the domestic elk ranching industry as a whole–was supported by absolutely no evidence. Based on these facts, the district court's grant of fees and costs was within the bounds of its discretion. Furthermore, the court reached its decision through clear and well-articulated reasoning. Thus, the district court did not abuse its discretion by awarding attorney fees under I.C. § 12-117.

G.     The State is entitled to an award of attorney fees under I.C. § 12-117 for the Rammells' pursuit of this appeal.

Defendants, the prevailing party, assert that they are entitled to costs and attorney fees under I.A.R. 41 and I.C. § 12-117. In reply, the Rammells contend that attorney fees are not warranted and that they were only requested to dissuade the Rammells from appealing the

district court's ruling. The Rammells insist that finding that their claims had no basis in law or fact is "specious," but provide no legal authority or argument for their conclusion.

This Court has held that I.C. § 12-117 "authorizes the awarding of attorney fees on appeal." *Daw ex rel. Daw v. Sch. Dist. 91 Bd. of Trs.,* 136 Idaho 806, 808, 41 P.3d 234, 236 (2001). The Court employs a two-part test to determine if I.C. § 12-117 is invoked on appeal: (1) the party seeking fees must be the prevailing party and (2) the nonprevailing party must have acted without a reasonable basis in fact or law. *City of Osburn*, 152 Idaho at 910, 277 P.3d at 357.

Here, because the district court's grant of summary judgment is affirmed, Defendants are the prevailing party. Additionally, we find that the Rammells have pursued this appeal without a reasonable basis in law or fact. On appeal, the Rammells have raised six separate issues. One of these issues, reassignment on remand, was not addressed because this case will not be remanded. Both the issues of their right to just compensation and the improper award of attorney fees below were made without any analysis or factual support. Additionally, the Rammells' two claims that summary judgment was improper due to the existence of a genuine issue of material fact both mischaracterized and misapplied the law to the extent that no reasonable basis in law existed. Because Defendants are the prevailing party on appeal and the Rammells pursued this appeal without a reasonable basis in fact or law, Defendants are entitled to attorney fees on appeal.

## IV.
## CONCLUSION

The judgment of the district court is affirmed. Defendants are awarded their costs and attorney fees on appeal.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.